NOT DESIGNATED FOR PUBLICATION

No. 112,898

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
X.H., Year of Birth: 2008, a Male,
and
W.H., Year of Birth: 2011, a Female.

MEMORANDUM OPINION

Appeal from Montgomery District Court; FREDERICK W. CULLINS and GARY R. HOUSE, judges. Opinion filed September 11, 2015. Affirmed.

*Philip J. Bernhart*, of Coffeyville, for appellant natural father.

*Daniel M. Reynolds*, of Emert, Chubb & Gettler, LLC, of Independence, for guardian ad litem, and *Daylene Walls*, assistant county attorney, for appellee.

Before GREEN, P.J., HILL, J., and TIMOTHY G. LAHEY, District Judge, assigned.

*Per Curiam*: R.H. (father) is the natural father of two minor children: X.H., born in 2008, and W.H., born in 2011. Later the trial court ruled that clear and convincing evidence existed that father was unfit to parent X.H. and W.H. Moreover, the trial court determined that father was unlikely to change in the foreseeable future. The trial court concluded it was in the best interests of the children to terminate father's parental rights. On appeal, father contends that (1) the trial court erred in denying his motion for change of judge; (2) the trial court erred in concluding that father was unfit and that his parental rights should be terminated; and (3) the trial court erred by approving an adoption plan which excluded the family of the father as a resource. Finding no merit in these contentions, we affirm.

1

The State filed a child in need of care petition for X.H. in January 2011. The following factual allegations were included in the petition:

- On January 5, 2011, a law enforcement officer was sent to a residence in Coffeyville, Kansas, concerning four minor children. The officer was told that the natural mother was suffering a mental breakdown and was unable to care for the children. The natural mother was hospitalized. The officer placed the minor children in protective custody.

- At the time of the petition, the natural mother was a patient at Stormont Vail West Behavioral Health Services in Topeka, Kansas.

- The family had prior contacts with law enforcement, which included a domestic dispute incident between the natural mother and father. On January 28, 2010, following the domestic dispute, father was arrested and the children were released to their natural mother.

The trial court found that an emergency existed, which threatened the safety of the children. The trial court further found that remaining in the family's home was contrary to the welfare of the children and immediate placement was in the best interests of the children. X.H. and the three other children were placed in state custody.

The State filed a child in need of care petition for W.H. in August 2012. The following factual allegations were included in the petition:

- On August 13, 2012, father was driving when a law enforcement officer saw that W.H. was not properly restrained and was standing in the back seat of a moving vehicle. When the officer stopped the vehicle, father was unable to provide a driver's license; his license had been revoked because he was a habitual violator.

2

The officer smelled the odor of alcohol emitting from father. Father initially refused to provide a breath sample; 20 minutes later he provided a test which showed a BAC of .067. The officer located a freshly opened can of beer under the passenger seat. The officer also located drug paraphernalia in W.H.'s diaper bag. Father was arrested; W.H. was placed in protective custody.

- W.H. had a sibling and half siblings; they had a history with the Department for Children and Families. The minor children were already adjudicated children in need of care. R.H. was the father of one of the minor children.

- Father had an extensive traffic violation and criminal history. At the time of the petition, father was facing violation of the following offenses: driving while habitual violator; possession of drug paraphernalia; aggravated endangering a child; transporting an open container; failure to use child restraint; refusal of PBT; and obstruction. Father was incarcerated in the Montgomery County Department of Corrections.

The trial court found that W.H. was likely to sustain harm if not immediately removed from the home, remaining in the home or returning to the home would be contrary to the welfare of the child, and immediate placement was in the best interests of the child. W.H. was placed in state custody.

On December 28, 2013, father moved to change the judge in this case. In his supporting affidavit, father argued that he would not receive a fair hearing because Judge Frederick W. Cullins had already decided to terminate his parental rights. Father argued that the facts set forth in his affidavit "have resulted in a steam-roller approach to the termination of [father's] parental rights." Under K.S.A. 20-311d, this matter was assigned to Judge Gary R. House for a ruling. Judge House determined that the affidavit was not legally sufficient to question the impartiality of Judge Cullins; Judge House denied the

3

motion for change of judge. The case proceeded to a hearing on the termination of parental rights on May 21, 2014.

A KVC Behavorial Healthcare, Inc., case manager testified there were nine case plans in this case and father appeared at only three of the meetings. When X.H. went into custody, father told the case manager he did not want to be involved. When W.H. went into custody, father refused to work any of the case plans. The first time father indicated he wanted to work on the case plans to reintegrate with his children was on May 9, 2014. The case manager further testified that father failed to maintain contact with his children; he exercised three supervised visits in 40 months because he was in jail. According to the case manager, father was not capable of caring for and raising his children.

Father testified that his attorney told him to let the natural mother work the case plan and "to see how that went and not really stick [father] in there right away." He also stated he was incarcerated for 4 months in 2012 and was not working the case plan. When he was released from incarceration, he contacted TFI Family Services and told them he wanted to work the program. He began taking parenting classes, but he was only out of jail for a month and a half before he was incarcerated again. This time he was incarcerated for 10 months.

Father testified that he contacted KVC when he was released, but no one ever set up a case plan with him. Father said his three visits with X.H. and W.H. "went great." At the time of the hearing, father was not incarcerated, he was employed, and he was paying child support. Father recognized he owed a large amount of back child support; he was paying $300 per month toward current child support and $100 per month toward the delinquent amount.

The trial court determined that father did not rebut the statutory presumption of unfitness provided by K.S.A. 2014 Supp. 38-2271. The trial court held that father

"substantially neglected or willfully refused to carry out a reasonable plan approved by the Court towards reintegration . . . . And there's a substantial probability that [he] will not carry out such plan in the future." The trial court further found by clear and convincing evidence that father was unfit to properly care for X.H. and W.H., and the conditions of unfitness were not likely to change in the foreseeable future. The trial court concluded that it was in the best interests of X.H. and W.H. to terminate father's parental rights.

*Did the Trial Court Err by Denying the Motion for Change of Judge?*

Father argues that the trial court erred by finding that the affidavit in support of the motion did not form a legally sufficient basis to challenge the impartiality of Judge Cullins. He claims that the affidavit alleged the trial court showed prejudice and "was pushing the case toward severance." He further contends that a different judge should have presided over the termination hearing.

In his supporting affidavit, father identified five instances in which Judge Cullins allegedly demonstrated a personal bias or prejudice. Father's generally argued concerns fell under K.S.A. 20-311d(c)(5) which provides a party may have grounds to support a motion for a change of judge when "[t]he party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies."

Under K.S.A. 20-311d(b), the motion and affidavit was presented to district court Chief Judge Roger L. Gossard. Because of a conflict of interest, this matter was referred to Judge House to determine the legal sufficiency of the affidavit. Before making his decision, Judge House examined the motion and the supporting affidavit; transcripts of various hearings; court files, reports, and case plans; and applicable state law. Judge

5

House found the facts alleged in the affidavit to be legally insufficient to question the impartiality of Judge Cullins.

Our Supreme Court has developed a two-part test for analyzing an allegation of judicial bias:

> "First, the defendant must show that the trial judge has a duty to recuse. Second, the defendant must show actual bias or prejudice that warrants setting aside the conviction or sentence. But bias or prejudice will be presumed when, based on objective standards, the probability of actual bias is too high to be constitutionally tolerable." *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012).

"When reviewing the legal sufficiency of an affidavit in support of a motion for a change of judge, we have unlimited review." *Robinson*, 293 Kan. at 1032. The appellate court "must decide the sufficiency of the affidavit and not the truth of the facts alleged." 293 Kan. at 1032.

Applying the first prong, a judge has a duty to recuse from any case "in which the judge's *impartiality* might reasonably be questioned, including but not limited to the following circumstances:  (1) The judge has a personal bias or prejudice concerning a party." Supreme Court Rule 601B, Kansas Code of Judicial Conduct, Canon 2, Rule 2.11(A)(1) (2014 Kan. Ct. R. Annot. 767); see *Robinson*, 293 Kan. at 1032.

"In determining the sufficiency of an affidavit filed pursuant to K.S.A. 20–311d," this court examines whether

> "'[t]he affidavit . . . state[s] facts and reasons, pertaining to the party or his attorney which, if true, give fair support for a well-grounded belief he will not obtain a fair trial. [Citations omitted.] The question of the sufficiency of the affidavit is one of law for the court to determine but "[p]revious adverse rulings of a trial judge, although numerous and

6

erroneous, where they are subject to review, are not ordinarily and alone sufficient to show such bias or prejudice as would disqualify him as a judge."' [Citation omitted.]

"'The standard to be applied to a charge of lack of impartiality is:

"whether the charge of lack of impartiality is grounded in facts that would create reasonable doubt concerning the judge's impartiality, *not* in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person *with knowledge of all the circumstances.*"' [Citations omitted.]" *Smith v. Printup*, 262 Kan. 587, 606-07, 938 P.2d 1261 (1997).

In reaching his determination, Judge House found:

"Judge Cullins has made his decision based upon the more than two years [*sic*] history of this case, and what he believes is in the best interests of the children after weighing the recommendation of Kaw Valley and the G.A.L. against the recommendations of the State and the parents' attorneys, and the records of the parents failing to meet case plan goals. This Court does not find his actions to be bias or prejudice against [father]. At the end of the day it is for the Judge to make this decision."

In his affidavit, father alleged:

"The judge in these causes was the judge in a criminal case in Montgomery County involving [father], in which [father] was convicted and sentenced by this judge to incarceration, and although he may normally be presumed to be able set [*sic*] aside his ostensible belief or position that [father] is a criminal who deserves to be punished, and afford [father] a fair trial in these causes, such presumption has the appearance of not applying here when combined with the facts set forth above all of which have resulted in a steam-roller approach to the termination of [father's] parental rights."

Father's general complaints stem from previous adverse rulings such as not accepting father's adoption plan, which was agreed upon before the termination hearing,

7

and Judge Cullins' involvement in father's criminal case. Nothing in the record indicates Judge Cullins demonstrated a personal bias or prejudice against father. Additionally, father has failed to show Judge Cullins had a duty to disqualify himself. As a result, father has failed to meet the first prong of the test provided in *Robinson*, and this court need not address the second prong. See *Robinson*, 293 Kan. at 1035.

The trial court properly denied father's motion for a change of judge.

*Did the Trial Court Err by Finding Father was Unfit and by Terminating His Parental Rights?*

Father argues that the trial court's finding of unfitness was not supported by clear and convincing evidence. He also contends that the trial court erred by terminating his parental rights. We first set forth our standard of review.

When reviewing the trial court's decision to terminate parental rights, this court should "consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," that the parent's rights should be terminated. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

If a child is adjudicated a child in need of care, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2014 Supp. 38-2269(a). K.S.A. 2014 Supp. 38-2201 *et seq.*, the Revised Kansas Code for Care of Children, lists a number of nonexclusive factors the trial court must consider in

8

determining a parent's unfitness. K.S.A. 2014 Supp. 38-2269(b) and (c). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. K.S.A. 2014 Supp. 38-2269(f). The trial court is not limited only to the statutory factors in making a determination of unfitness. K.S.A. 2014 Supp. 38-2269(b).

In the present case, the trial court ruled that the father was unfit based on the following statutory factors:

- Father failed to adjust his circumstances, satisfying K.S.A. 2014 Supp. 38-2269(b)(8).
- At the time of the hearing X.H. had been in out-of-home placement for 3 years and 4 months. W.H. had been in out-of-home placement for 1 year and 9 months. The children had been in an extended out-of-home placement for more than 1 year, and the additional factors listed below apply, thus satisfying K.S.A. 2014 Supp. 38-2269(b)(9).
- Father failed to maintain a home, satisfying K.S.A. 2014 Supp. 38-2269(c)(1).
- Father failed to maintain regular visitation or contact with the children; he exercised only three visitations and was incarcerated 451 days during the pendency of these cases, satisfying K.S.A. 2014 Supp. 38-2269(c)(2).
- Father failed to carry out a reasonable plan for reintegration and attended only three out of nine case plans, satisfying K.S.A. 2014 Supp. 38-2269(c)(3).
- Father failed to provide a reasonable portion of the cost of substitute care of his children, satisfying K.S.A. 2014 Supp. 38-2269(c)(4).

First, this court must determine whether the trial court's findings of unfitness were supported by clear and convincing evidence. As previously discussed, the trial court

9

heard evidence regarding father's unwillingness to participate in the case plans. The trial court also heard testimony and reviewed reports regarding father's lack of contact with his children, his periods of incarceration, and his arrest involving W.H. The trial court took judicial notice of all of the court proceedings, the social history file in this matter, the civil files pertaining to child support, and father's criminal history. The court heard additional testimony that X.H. had been in custody for approximately 3 years and 4 months, and W.H. had been in custody for approximately 1 year and 9 months.

K.S.A. 2014 Supp. 38-2271(a) states:

"It is presumed in the manner provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:

. . . .

(5) the child has been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home;

(6)(A) the child has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; (B) the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and (C) there is a substantial probability that the parent will not carry out such plan in the near future."

K.S.A. 2014 Supp. 38-2271(b) provides:

"The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in proceedings pursuant to K.S.A. 2014 Supp. 38-2266 et seq., and amendments thereto."

10

The trial court made the requisite findings provided by K.S.A. 2014 Supp. 38-2271(a)(5)-(6). Father failed to overcome this presumption, and the trial court terminated his parental rights.

Based on the aforementioned facts, clear and convincing evidence supported the trial court's determination that father was unfit by reason of conduct or condition, which rendered him unfit to care properly for his children, and his conduct or condition was unlikely to change in the foreseeable future.

This court's next step is to determine whether clear and convincing evidence supported the trial court's determination that father's behavior was unlikely to change in the foreseeable future. See K.S.A. 2014 Supp. 38-2269(a). The term "foreseeable future" is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered periods of time as short as 7 months to be the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790. A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

The trial court heard testimony regarding the significant amount of time the children had spent in state custody. Father continuously failed to participate in the case plans. The trial court may predict father's future unfitness based on his history. Clear and convincing evidence supported the trial court's determination that father's behavior was unlikely to change in the foreseeable future.

The last consideration is whether the trial court correctly determined that terminating father's parental rights was in X.H.'s and W.H.'s best interests. K.S.A. 2014 Supp. 38-2269(g)(1) provides that even after a finding of unfitness, the trial court must determine whether the termination of parental rights is in the best interests of the children.

11

Because it hears the evidence directly, the trial court is in the best position to determine the best interests of the child, and an appellate court cannot overturn it without finding an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. An abuse of discretion occurs when no reasonable person would agree with the trial court or when the court bases its decision on an error of fact or an error of law. *In re R.S.*, 50 Kan. App. 2d 1105, Sy. ¶ 2, 336 P.3d 903 (2014).

The trial court held that father was not likely to change his conduct or condition in the foreseeable future; father was unwilling or unable to change his circumstances, and he demonstrated this by failing to work any case plans or maintain regular contact or communication with his children. The trial court determined by clear and convincing evidence that father could not meet the physical, emotional, or mental needs of the children. The trial court determined that reintegration with father was no longer a viable alternative and it was in the best interests of the children to terminate father's parental rights.

The trial court's decision to rule father unfit was supported by clear and convincing evidence, and the trial court did not abuse its discretion by terminating his parental rights.

*Did the Trial Court Err by Approving an Adoption Plan Which Excluded the Family of Father as a Resource?*

On appeal, father argues that he should have been allowed to present testimony at the termination hearing regarding the future placement of his children. Father's argument is set forth in a single paragraph. He abruptly concluded with what seemed to be an afterthought—that his due process rights were violated.

12

Father fails to support this claim with pertinent authority or show why it is sound despite a lack of supporting authority. This is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013). An issue not briefed by the appellant is deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). As a result, this court need not address this issue.

Affirmed.