NOT DESIGNATED FOR PUBLICATION

No. 117,061

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALE KAYS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; ROBERT J. BEDNAR, judge. Opinion filed December 22, 2017. Affirmed.

*Benjamin N. Casad*, of Leavenworth, for appellant.

*Christopher R. Scott*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

PER CURIAM: In October 2016 a jury in the Leavenworth District Court found Dale F. Kays guilty of driving under the influence of alcohol or drugs, failure to remain at the scene of an injury accident, and failure to maintain a single lane of travel. Kays timely appeals, asking for the convictions to be reversed and the case remanded for a new trial. We find no error and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

On January 22, 2016, Kays' vehicle struck a mailbox and a road sign and came to a stop in a ditch in a rural area near Easton, Kansas. The driver of the vehicle left the area before Corporal Jason Slaughter of the Leavenworth County Sheriff's Office arrived on scene. Shortly thereafter, Slaughter received a report from dispatch that the driver of the vehicle was at a bar in Easton.

When Slaughter arrived at the bar, he saw Kays sitting at the bar facing the door. At Kays' trial, Slaughter testified that when he looked at the truck before going to the bar, he saw the front windshield of the vehicle had "spidering"—a shattering of the windshield—located directly in front of the driver's seat. When he made contact with Kays, Slaughter asked him whether he had any injuries. Kays replied that he had no injuries, despite a laceration to his forehead that was apparent to Slaughter and "burn abrasion marks" that Slaughter saw on the webbing of Kays' hands. Based on his training and experience, Slaughter thought the marks on Kays' hands were consistent with gripping a steering wheel during an impact. Slaughter also noticed a large number of glass shards in Kays' hair, around his forehead.

Slaughter asked Kays about the wrecked truck in the ditch. Kays acknowledged the truck was his but said he had not been the driver. Kays told Slaughter someone named "Jimmy" had been driving the vehicle at the time of the accident, but Kays provided no last name or contact information for Jimmy. Based on his contact with him at the bar, Slaughter testified Kays appeared to be very intoxicated. Slaughter said Kays was very loud, had strongly slurred speech, "horrible balance," and shifted between being polite and being argumentative and loud. Kays admitted to Slaughter he had consumed alcohol, but there was no evidence he had consumed any alcohol at the bar—no water or other drink, no glass, cup, or bottle where he sat.

2

Based on the information he had gathered, Slaughter arrested Kays for driving under the influence of alcohol. Slaughter believed Kays had been the driver of the vehicle at the time of the crash because the windshield had been shattered in front of the driver's position and Kays had a large amount of glass in his hair as well as injuries to his forehead and hand. Kays also had admitted to drinking alcohol, and there was no evidence that had happened after the accident. There also was the odor of alcohol and slurred speech as well as the absence of evidence to support the presence of another person, the one Kays referred to as Jimmy.

The State charged Kays with driving under the influence, failure to remain at the scene of an injury accident, and failure to maintain a single lane.

Deputy Kent Leintz also testified at Kays' trial. Leintz identified six photographs he took at the accident scene, which were admitted into evidence. After the roadway was cleared and Leintz was finished at the scene, he also went to the bar where Slaughter was talking to Kays about the accident. Leintz said Kays appeared to be "very intoxicated," to the point it was questionable whether he could move from the bar stool to a chair on his own. He saw scrape marks on Kays' head, glass in his hair, and injuries to his hands. Kays told Slaughter and Leintz he was an occupant of the truck, not the driver. Leintz testified he thought Kays was the truck's driver because the truck's windshield was broken only on the driver's side—nothing disturbed on the passenger side—and Kays had glass in his hair and injuries to his hands that were consistent with him being the driver. Leintz read Kays the required implied consent notice and Kays told him he would take whatever test they wanted since he was not the driver at the time of the accident. Kays consented to submit a blood sample, which, when it was later analyzed by the Kansas Bureau of Investigation lab (KBI), was shown to contain a blood alcohol level of .319 grams per 100 milliliters of blood.

During Kays' cross-examination of Leintz, a photograph of the inside of the truck was entered into evidence. Leintz testified the passenger side mirror was broken and possibly hit the passenger door window, breaking it. He also agreed that in the photograph there were things on the seat that could be small pieces of glass, although he could not tell from the photo. Leintz acknowledged the right side of the vehicle received fairly extensive damage.

Kays testified in his own defense and admitted he had been drinking and was intoxicated prior to the accident. He said Jimmy was a man who had driven down his driveway as Kays was doing some work on a vehicle he had given his granddaughter. Jimmy wanted to buy a battery and Kays sold him one. Then Jimmy asked about buying Kays' truck and wanted to test drive it. Kays would only let him drive it if he went along, so they left in the truck and drove around some back roads. Kays said he felt the truck run onto the shoulder and he was holding the right door handle as there was impact; his head hit the side window, and the truck ended up in the ditch. Kays testified that as he was trying to undo his seatbelt, Jimmy got out of the vehicle and left. He said he never saw Jimmy again and did not give a description of Jimmy to law enforcement because they did not ask for one.

The jury convicted Kays of all three charges. The district court sentenced him to six months in jail for both the DUI and the leaving the scene convictions, to run concurrently, and granted probation for 11 months after 10 days had been served. The court imposed a $75 fine for the lane violation. Kays timely appeals.

ANALYSIS

Kays contends the State made a number of improper comments during closing argument. His appeal focuses on three particular parts of the State's argument which he claims: (1) commented on his credibility; (2) commented on his right to remain silent; or

(3) made statements contrary to the evidence. He argues they were "all highly prejudicial and had the effect of denying [him] a right to a fair trial." The State responds that all comments made in argument were within the wide range given to prosecutors to argue their cases.

When a defendant claims a prosecutor has engaged in improper argument, we follow the two-step process established in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016):

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" 305 Kan. at 109.

Kays' claims of prosecutorial error focus on three parts of the State's closing, which we group to match Kays' arguments.

*Credibility and comment on right to remain silent*

We begin with a look at the first two excerpts from the State's closing where Kays sees error. Kays claims the State improperly impugned his credibility and commented on his silence. In the first part that Kays highlights, the State argued:

"What else did officers find or not find? Well, there's nobody else in the area. This Jimmy guy, there is no evidence this guy even exists. Not in the area. Well, where'd he go? Mr. Kays, where'd he go? I don't know, he just left the car. Never gave a description or anything that led up to this alleged, I guess, stranger giving him the opportunity to drive your vehicle down the road and ultimately wrecking it. None of that information was provided to officers on the night of these events. It's just simply, I wasn't driving. It was this guy named Jimmy. But, again, the evidence only points to the defendant as the driver."

In the second portion, the prosecutor said:

"They had no evidence of anybody else. There was nobody in the area. Nobody else carne forward. They never tracked down a person named Jimmy. The defendant never gave a description of this person named Jimmy. He just said, [o]h, I—I just know I was the one who wasn't driving and it was this guy named Jimmy. The evidence doesn't back that up, ladies and gentlemen."

In each of these instances, Kays claims the State impermissibly commented on his credibility. Kays goes further, arguing that saying there was "no evidence of anybody else" not only questioned Kays' credibility, but implied Kays' own testimony about being only a passenger was not part of the evidence.

On the matter of comments about a defendant's credibility, Kays relies on *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000). He admits that in *Pabst* the prosecutor accused the defendant of lying, which did not happen in his case. He contends, however,

6

that "to say that the defendant[']s testimony isn't evidence is almost like saying the defendant is lying."

His argument is unpersuasive with respect to both of these excerpts from the State's closing. The distinction between this case and *Pabst* is significant. The prosecutor in *Pabst* accused Pabst of lying or being a liar at least 11 times in closing. That did not occur here. Nor did the prosecutor here refer to Kays' testimony as a "yarn," "fairy tale," "fabrication," "tall tale," or other euphemisms for "lie" like the prosecutor in *State v. Elnicki*, 279 Kan. 47, 62, 105 P.3d 1222 (2005).

Unlike the circumstances in both *Pabst* and *Elnicki*, the prosecutor here commented on the evidence—and lack of evidence—implicitly acknowledging that Kays has indeed given evidence that Jimmy, rather than he, was the driver. Immediately preceding the second excerpt above, the prosecutor said: "[y]ou heard officers testify that the conclusions in their investigation were there was no evidence of anybody else driving this vehicle except the defendant in this case." This set up the contrast between the officers' evidence and Kays' evidence.

The border of impropriety is well-defined:

> "In general, a prosecutor may not offer a jury the prosecutor's personal opinion as to the credibility of a witness because such a comment is unsworn, unchecked testimony, not commentary on the evidence of the case. The determination of the truthfulness of a witness is for the jury." *State v. Akins*, 298 Kan. 592, Syl. ¶ 6, 315 P.3d 868 (2014).

Here, the prosecutor challenged and commented on Kays' evidence, arguing it lacked support based on the testimony from Slaughter and Leintz. He did not, however, commit error by expressing his own opinion on the credibility of Kays' version of events. The

7

jury necessarily had to choose which evidence to accept. The State did not improperly comment on Kays' credibility.

Kays also contends these excerpts show the State impermissibly commented on his right to remain silent. Kays' entire argument on this point, however, consists of two sentences: "These comments were a direct reference to both the defendant's credibility and his right to remain silent. The comments implied that the defendant had a duty to give evidence to the police and that he had somehow failed in that duty." Kays offers no further analysis and cites no authority supporting his bare assertion.

> "A failure to support an argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned [Citation omitted.]" *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

The fact that Kays has abandoned this issue procedurally, however, is of no consequence since the prosecutor's statements did not constitute error. Although a prosecutor may not comment on a defendant's postarrest silence, reference to a defendant's *prearrest* silence is permissible to impeach the defendant's credibility. *State v. Hernandez*, 284 Kan. 74, 93, 159 P.3d 950 (2007). In this case, the prosecutor did not comment on Kays' postarrest silence. Instead, he referred to the sparse information Kays gave the officers about the events before his arrest—he wasn't driving, it was a man named Jimmy—and to Kays' failure to provide any further means of identifying or finding that person. Recounting that prearrest information from Kays and relating it to Kays' trial testimony was not impermissible commentary on Kays' right to remain silent after his arrest.

*Misstatement of evidence*

Finally, Kays points to a third part of the State's argument:

> "What did officers observe on the accident scene? Well, there was spidering in the windshield in two different spots. And you'll see it in the photographs, you've seen it up there, but you'll get it. You'll get the photographs in evidence as well. And where— where's the spidering of the windshield? It's only on the driver's side of the vehicle. There is nothing—there is no damage to that vehicle on the passenger side."

Here, Kays takes issue with the last clause "there is no damage to that vehicle on the passenger side," claiming it mischaracterized or contradicted the evidence. Kays argues the testimony from Leintz that the passenger side window appeared to be broken, coupled with his own testimony that his head hit the side window, was important support for his argument that he was a passenger—rather than the driver—at the time of the accident.

Placed in context with the two sentences immediately preceding the "no damage" comment, the most reasonable inference is that the comment was a reference to the passenger side of the windshield, rather than to the outside of the vehicle on the passenger side. Leintz testified the windshield was broken only in front of the driver's seat, with "nothing disturbed on the passenger side of the vehicle." Within the context of that part of the argument, the prosecutor's statement did not mischaracterize the evidence and was not erroneous.

Although we do not find the "no damage" comment to be a misstatement of the evidence when read in context, Kays would not be entitled to relief even if we were to accept his very literal reading. Indeed, that one phrase from the prosecutor's argument did state there was no damage to the *vehicle* on the passenger side, rather than the *windshield*. And when Leintz testified about one of the photographs in evidence, he agreed there was "fairly extensive damage" to the passenger side of the vehicle, setting up the

9

contradiction on which Kays relies. Even if we accepted his argument, however, we would find the error did not prejudice the outcome.

An error will be declared harmless if "the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

The State contends the statements were within the broad scope of argument given to a prosecutor and if there was any error, it did not contribute to the verdict. We agree. The statement about damage to the side of the vehicle was part of one sentence in the State's argument. The prosecutor did not return to the issue again during his closing.

Defense counsel countered with argument in his closing about significant damage to the passenger side of the vehicle and his contention that the evidence showed a broken passenger door window that could be consistent with Kays being a passenger rather than the driver. Further, the jury had the benefit of photographs of the accident scene showing the damage to the vehicle and the other property damage from the collision. Kays also placed into evidence a picture of the interior of the vehicle which showed the passenger side mirror was broken.

In addition, the State presented considerable evidence to support a finding that Kays was the driver, which in turn supported the verdict since Kays had admitted he was intoxicated. Slaughter testified he observed "spidering" of the windshield directly in front of the driver's seat which was consistent with a driver who was not wearing a seatbelt and impacted the windshield. And when Slaughter made contact with Kays, he observed Kays had a laceration on his forehead and a large number of glass shards near his forehead. Slaughter testified he also saw burn abrasions on the webbing of Kays' hands that in Slaughter's experience were consistent with gripping the steering wheel during an impact.

10

Similarly, Leintz testified he believed Kays was the driver because the windshield was only broken in front of the driver's seat, nothing was disturbed on the passenger side of the vehicle, Kays had glass in his hair, and his hand injuries were consistent with a vehicle coming to a sudden stop. Leintz also testified Kays had a blood alcohol content of .319 grams per 100 milliliters of blood.

Even if this claim had not been abandoned and the prosecutor's single statement was taken literally to assert "no damage" to the exterior passenger side of the truck, its significance was minimal in light of the contradictory photographic and other evidence and by Kays' own argument. We see no reasonable possibility that the statement contributed to the verdict.

*Conclusion*

We find nothing in the State's closing that supports Kays' argument that he was denied a fair trial because of prosecutorial error. Kays' claims that the State presented an opinion on his credibility, commented on his postarrest silence, or misstated the evidence are all without merit.

Affirmed.