IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,472

STATE OF KANSAS,
*Appellee*,

v.

ROBERT M. WEBER,
*Appellant.*

SYLLABUS BY THE COURT

1.

An appellate court will not consider new issues raised for the first time in a letter of additional authority under Supreme Court Rule 6.09 (2019 Kan. S. Ct. R. 39).

2.

The Kansas Sentencing Guidelines Act, K.S.A. 21-4701 et seq., uses prior out-of-state convictions when calculating a person's criminal history. Under the Act, Kansas classifies an out-of-state conviction as a person or nonperson offense by referring to comparable offenses under the Kansas criminal code. If the Kansas criminal code does not have a comparable offense, the out-of-state conviction is classified as a nonperson crime.

3.

The legality of a sentence under K.S.A. 2018 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. Therefore, a sentence that was legal when pronounced does not become illegal if the law subsequently changes.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 7, 2016. Appeal from Sedgwick District Court; JOHN J. KISNER, Jr., judge. Opinion filed June 14, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Kimberly Streit Vogelsberg*, of the same office, was on the briefs for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Robert M. Weber challenges the district court's denial of a motion to correct an illegal sentence. He argues his 1976 Michigan conviction for assault with intent to commit criminal sexual conduct, second degree, was improperly scored as a person crime, resulting in a longer sentence following his 2007 attempted robbery conviction in Kansas. The Court of Appeals determined the person classification was correct. *State v. Weber*, No. 113,472, 2016 WL 5867238, at *3 (Kan. App. 2016) (unpublished opinion).

The overarching issue is whether the sentencing court properly classified Weber's 1976 Michigan conviction as a person crime. If it is scored as a nonperson crime, Weber's criminal history score is C instead of B. See K.S.A. 21-4709. That change would move Weber's sentence from presumptive imprisonment to presumptive probation, and the low grid-box sentence would drop from 27 to 25 months. See K.S.A. 21-4704.

We affirm in accordance with *State v. Murdock,* 309 Kan. 585, 591, 439 P.3d 307 (2019) (*Murdock II*) (holding sentence that was legal when pronounced does not become illegal if the law subsequently changes).

FACTUAL AND PROCEDURAL BACKGROUND

Weber pleaded guilty to an April 2007 attempted robbery, a severity level 7 crime. The plea agreement reflects the State anticipated Weber would have a criminal history score of C.

A presentence investigation revealed Weber had two prior convictions: a 1976 Michigan conviction for assault with intent to commit criminal sexual conduct, second degree; and a 1979 Michigan conviction for criminal sexual conduct, first degree. The PSI reflected these should both be scored as person felonies, giving Weber a criminal history score of B. See K.S.A. 21-4709 (providing B criminal history score if offender has two prior person felony convictions). Weber did not object.

After overruling Weber's motion for a downward dispositional departure, the sentencing court determined he had a criminal history score of B and imposed the low grid-box sentence, 27 months, for the attempted robbery conviction. The sentence was imposed in September 2007. Weber did not appeal.

In 2014, Weber moved to correct an illegal sentence after the decision in *State v. Murdock*, 299 Kan. 312, 318-19, 323 P.3d 846 (2014) (*Murdock I*) (holding pre-KSGA out-of-state convictions must be scored as nonperson offenses), *overruled by State v. Keel,* 302 Kan. 560, 357 P.3d 251 (2015). He argued based on *Murdock I* that both Michigan convictions should have been scored as nonperson felonies because the person/nonperson designations did not appear in comparable Kansas statutes when the Michigan crimes occurred. The district court denied the motion, and Weber timely appealed.

3

*Keel* overruled *Murdock I* before Weber filed his opening brief with the Court of Appeals. He adapted to this by arguing for the first time that the person classification for his 1976 Michigan conviction was improper because it turned on judicial fact-finding that violated the *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), rule articulated in *State v. Dickey*, 301 Kan. 1018, 1021, 350 P.3d 1054 (2015), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013).

A Court of Appeals panel affirmed. *Weber*, 2016 WL 5867238, at *3. It reasoned "the 'essential question'" in making the person/nonperson designation was whether the out-of-state and Kansas offenses being compared are "'similar in nature and cover similar conduct.'" 2016 WL 5867238, at *2. The panel rejected Weber's claim that this comparison required impermissible judicial fact-finding since the Michigan crime's specific intent element was broader than the Kansas offense's. In his view, the Michigan statute criminalized conduct that is not always a felony in Kansas. 2016 WL 5867238, at *3.

The panel stated it would search for "the Kansas offense that is the 'closest approximation' or most 'comparable'" and that "[o]ffenses may be comparable 'even when the out-of-state statute encompassed some acts not necessarily encompassed by the Kansas statute.'" 2016 WL 5867238, at *2. The panel reasoned that, after referring to the out-of-state jurisdiction's laws to determine whether a prior crime is a felony:

> "[I]n this second step of the analysis the issue for the sentencing court to resolve was whether the comparable Kansas crime is a person or a nonperson crime. Intent is not a factor. Assaults in Kansas in their various iterations are all person offenses. Regardless of the intent of a defendant convicted of some form of assault in Kansas, the offense is always a person crime. Thus, the district court did not need to engage in any fact-finding to determine that Weber's 1976 Michigan crime should be treated as a person crime." 2016 WL 5867238, at *3.

4

We granted Weber's timely petition for review. The State did not cross-petition for review of the panel's adverse rulings rejecting its arguments that (1) Weber's motion was not a proper procedural vehicle for his constitutional claims; (2) he waived the claim by failing to object to his criminal history score at sentencing; (3) he waived his right to a jury determination of sentencing facts; (4) his claim was barred by res judicata; and (5) *Dickey*, 301 Kan. 1018, and *Descamps* cannot be applied on collateral review of a sentence already final when those cases were announced. See *Weber*, 2016 WL 5867238, at *1-2.

Jurisdiction is proper. See K.S.A. 20-3018(b) (petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 et seq., a prior out-of-state conviction must be classified as a "person" or "nonperson" crime. K.S.A. 21-4711(e) provides:

> "Out-of-state convictions and juvenile adjudications will be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. *In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime*. Convictions or adjudications occurring within the federal system, other state systems, the District of Columbia, foreign, tribal or military courts are considered out-of-state

5

convictions or adjudications. The facts required to classify out-of-state adult convictions and juvenile adjudications must be established by the state by a preponderance of the evidence." (Emphasis added.)

At the time Weber was sentenced, Kansas caselaw construed K.S.A. 21-4711(e) to mean "[f]or purposes of determining criminal history, the offenses need only be comparable, not identical." *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003). "[T]he comparable offense" was "the closest approximation" to the out-of-state crime. 276 Kan. at 179.

But while Weber's petition for review was pending, the legal landscape for scoring out-of-state convictions arguably shifted because of *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). In that decision, the court held:

> "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

Weber raised the *Wetrich* issue in his supplemental brief. The State did not file a supplemental brief or respond to Weber's brief. But after the briefing deadlines, the State submitted a Rule 6.09 (2019 Kan. S. Ct. R. 39) letter noting that over a year earlier—and 12 months before Weber's petition for review was granted—the Legislature amended the Code of Criminal Procedure to provide, "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." See K.S.A. 2018 Supp. 22-3504(3). In its letter, the State argued this change precluded applying *Wetrich* in Weber's case because the revision is procedural only and, therefore, retroactive, citing

6

*State v. Dawson*, 55 Kan. App. 2d 109, 116-18, 408 P.3d 995 (2017), *rev. granted* 308 Kan. 1597 (2018).

Weber argues the State waived its new statutory preclusion argument when it could have raised that issue in its supplemental brief because the legislative amendment occurred well before the State's briefing deadline. On the merits, Weber advances three points: (1) the Court of Appeals incorrectly decided *Dawson* because the statutory amendment affects substantive rights; (2) *Wetrich* merely clarified the law, so it did not represent the "change in the law" required by the statutory amendment; and (3) the analysis used in *Wetrich* had been required at least as early as *Apprendi* in 2000, before his sentence was imposed.

*The State waived its new statutory preclusion argument.*

The timeline is important. The legislative change the State wants to invoke to preclude Weber's argument was effective May 18, 2017. As it happened, just over a year later this court granted Weber's petition for review, which triggered the parties' ability to submit supplemental arguments. On June 28, 2018, Weber filed his supplemental brief arguing *Wetrich* applied to his illegal sentence claim. Under Supreme Court Rule 8.03(h)(3) (2018 Kan. S. Ct. R. 53), the State could have filed a response within 30 days. It did not avail itself of that opportunity. On August 8, 2018, the State filed a Rule 6.09 letter to raise for the first time the statutory preclusion argument arising from the 2017 legislative enactment. Weber now objects to the State's procedural failure to properly address the question. We agree with Weber.

In *State v. Torres*, 294 Kan. 135, 273 P.3d 729 (2012), the court held the State could not use a 6.09 letter to raise recent amendments to K.S.A. 60-455 as a rationale for finding it was harmless to erroneously admit evidence under the older version of the

statute. The court reasoned the State's claim was "inadequately briefed and therefore not properly before us in this case." 294 Kan. at 145. Similarly, in *State v. Tague*, 296 Kan. 993, 1010-11 298 P.3d 273 (2013), the court held a defendant could not use a 6.09(b) letter to raise an entirely new issue on appeal concerning a lesser included offense. It reasoned, "Rule 6.09(b) letters are reserved for citing significant relevant authorities not previously cited which come to a party's attention after briefing." 296 Kan. at 1010. *Tague* cited *State v. Houston*, 289 Kan. 252, 277, 213 P.3d 728 (2009), which declared Rule 6.09 "was not intended to be, nor should it be, used as yet another briefing opportunity."

The State waived its statutory preclusion argument by failing to properly brief it. Both the statutory change and *Wetrich* predate our decision to grant review in Weber's case. Both obviously were known to the State prior to the parties' supplemental briefing deadline, and that briefing was the State's chance to argue their potential impact. See Rule 8.03(h)(3) (2018 Kan. S. Ct. R. 53). The State missed that opportunity, even though Weber seized it. Using a subsequent Rule 6.09 letter to advance a legal argument available to the State at the time it could have briefed it violates Rule 6.09's purpose. See *Houston*, 289 Kan. at 277.

*The 1976 Michigan offense was properly scored as a person crime at sentencing.*

In *Murdock II*, the district court sentenced the defendant three times. The second was in response to our mandate after *Murdock I*. The district court followed that mandate, the State did not appeal, and the second sentence became final. Six months later, we decided *Keel*, which overruled *Murdock I*. A few days after that, the State moved to correct Murdock's sentence based on *Keel*, and the district court sentenced him for the third time.

The *Murdock II* court reversed, repudiating the State's effort at a third sentencing. The *Murdock II* court held:

> "[T]he legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law." 309 Kan. at 591.

*Wetrich* was a change in the law as contemplated by *Murdock II*. See *Murdock II*, 309 Kan. at 592 ("[T]rue changes in the law cannot transform a once legal sentence into an illegal sentence, but developments in the law may shine new light on the original question of whether the sentence was illegal when pronounced."). Before *Wetrich,* no Kansas case construed the term "comparable" as used in K.S.A. 2018 Supp. 21-6811(e)(3), formerly K.S.A. 21-4711(e), to incorporate the identical-or-narrower requirement. *Vandervort* rejected such a construction when it reviewed a defendant's claim that an out-of-state offense and a Kansas offense could not be comparable since the out-of-state offense was broader, i.e., did not contain a lack-of-consent element required to commit the Kansas crime. See 276 Kan. at 178-79 ("Vandervort confuses the term 'comparable' with the concept of identical elements of the crime."). *Wetrich* substituted the statute's new interpretation for the old one. See 307 Kan. at 562.

Under the law at the time of Weber's sentencing, as he concedes, "[f]or purposes of determining criminal history, the offenses need only be comparable, not identical." *Vandervort*, 276 Kan. at 179. In *Murdock II*'s wake, he cannot argue *Wetrich* makes his sentence, which was legal when it was imposed, illegal. See *State v. Newton*, 309 Kan. __, __ P.3d __ (No. 116,098, filed June 7, 2019), slip op. at 6.

9

Affirmed.

LUCKERT, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]



[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 113,472 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.