NOT DESIGNATED FOR PUBLICATION

No. 119,231

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DELRAY TAPSCOTT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed August 9, 2019. Affirmed in part, sentence vacated, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt,* attorney general, for appellees.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

POWELL, J.:  Delray Tapscott originally pled guilty to one count of possession of methamphetamine. At sentencing, based in part on an A criminal history score, the district court sentenced Tapscott to 40 months in prison but granted his motion for a dispositional departure to probation. After multiple probation violations, the district court revoked Tapscott's probation and ordered him to serve his underlying prison sentence. On appeal, Tapscott first argues the district court erred in refusing to extend his probation. Second, although he never directly appealed his sentence, Tapscott now claims for the first time that his criminal history score was improperly calculated, thus making his sentence illegal. For reasons we more fully explain below, we affirm the district court's

1

revocation of his probation, but we remand the case to the district court to properly determine the legality of his sentence because according to the law in effect at the time Tapscott was sentenced, we cannot determine from the record whether Tapscott's two prior Florida convictions should be properly classified as person crimes.

FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2014, Tapscott pled guilty to one count of possession of methamphetamine in Shawnee County case 14-CR-232. Prior to sentencing, Tapscott objected to "all entries of criminal history originating from the State of Florida" included on his presentence investigation (PSI) report. Sentencing was continued in order for the State to obtain the journal entries of judgment and other documents to establish Tapscott's Florida convictions.

At the rescheduled sentencing on November 5, 2014, Tapscott's attorney withdrew the objection to the PSI. Tapscott also personally agreed to withdraw the objection to his criminal history score and then stipulated to his criminal history score of A, based, in part, on two Florida convictions:  burglary of a structure used as a dwelling and witness tampering. The following exchange regarding the objection to Tapscott's criminal history score occurred between the district court and Tapscott:

> "THE COURT: Okay. Mr. Tapscott, is that—is that your request also, to withdraw your objection to criminal history?
>
> "[TAPSCOTT]: Yes, sir.
>
> "THE COURT: Are you then stipulating that you do, in fact, have at least three prior person felony convictions which makes you an 'A' criminal history?
>
> "[TAPSCOTT]: Yes, sir.

2

"THE COURT: Okay. Thank you very much.

"I'll show the defendant's criminal history classification as A and it is uncontroverted."

Tapscott requested a dispositional departure, and the district court found that five substantial and compelling reasons existed to grant Tapscott's request. The district court sentenced Tapscott to an underlying prison sentence of 40 months with 12 months' postrelease supervision but placed him on probation from that sentence for 12 months.

Seven months later, on June 19, 2015, the State sought to revoke Tapscott's probation, alleging he violated the terms and conditions of his probation by failing to remain law abiding because he was arrested and charged in case 15-CR-344 with possession of a narcotic, possession of drug paraphernalia, attempted theft, and interference.

On September 16, 2015, the district court held a joint revocation hearing on the alleged probation violation in 14-CR-232 and a plea hearing in 15-CR-344. Tapscott stipulated to violating the terms of his probation in 14-CR-232 by failing to remain law abiding. In 15-CR-344, pursuant to a plea agreement, Tapscott entered a plea of no contest to possession of methamphetamine in exchange for the State's agreement to recommend a durational departure to 20 months in prison. The State explained the agreement and its understanding of the agreed-to sentence:

"[THE STATE]:  As part of that plea agreement in which he would be agreeing to serve the 20-month underlying sentence he has agreed to stipulate in 14-CR-232 to violating the terms of his probation. As part of the agreement to resolve that matter he would agree to a three-day quick dip, and he would agree to a probationary term that would leave him with 12 months probation upon his release from prison. So that he

3

would have a 12-month probation period running concurrent with the 12-month post release period in the 15-CR-344.

"The parties have just, the technical issues as to how that works, the State believed that we would need to simply extend probation for a longer period of time, which would be approximately 24 months probation, and that time would be running while he is serving his prison sentence. And we believe he has about six months credit for time served already, and with good time credit he'd be looking at serving a little over 11 months, in the State's calculations. So by extending probation either 23 or 24 months that should line up to the same time period.

"I believe Judge Wilson, our mediator, had provided some wording that she thought may assist the parties which would simply be adding language that the probation period would end at the same time as the post release period.

"THE COURT: Instead of saying that it starts at the date of post release, it ends on the same day as post release?

"[THE STATE]: Yes, Your Honor. The State did not believe that the probation period could simply be stalled or put on hold during the time he's in prison. The State believed that the time would be running, and it was the agreement of the parties that he would still have the 40-month sentence in that case during his post release and probation period. And I believe another opinion was that it could be. However, the State is unaware of that."

Tapscott's counsel agreed with the State's rendition of the terms of the plea agreement.

The district court accepted Tapscott's stipulation that he violated the terms of his probation in 14-CR-232 and accepted his no contest plea to one count of possession of methamphetamine in 15-CR-344.

At sentencing in 15-CR-344, on November 20, 2015, the State made the following sentencing recommendation:

> "Pursuant to the plea agreement in the 15-CR-344, it is, I believe going to be a recommendation of the parties that we ask he be given a three-day quick dip for violating his probation; and that his probation, as he will be serving 20 months in the new case and the agreement is for him to serve 12 months upon release from prison, that the total period that his probation will be extended for, as requested by the parties, would be 32 months with community corrections."

In 14-CR-232, the district court ordered a three-day quick dip jail sanction for Tapscott's probation violation and ordered that Tapscott be returned to probation for an extended period of 32 months from November 20, 2015, the date of sentencing in 15-CR-344. Thus, Tapscott's 32-month probation term would end on July 20, 2018.

In 15-CR-344, the district court addressed Tapscott's motion for a downward durational departure from the presumptive sentence of 40 months to a 20-month sentence, and the State agreed with Tapscott's motion. The district court found substantial and compelling reasons existed in support of the motion and granted the durational departure to 20 months' imprisonment. In summary, Tapscott would serve his 20 months' imprisonment in 15-CR-344; upon his release from that sentence he would serve a 3-day quick dip; then he would serve the remaining term of his probation—12 months—in 14-CR-232.

On March 16, 2017, after Tapscott had served his 20-month prison sentence in 15-CR-344, the State once again sought to revoke Tapscott's probation in 14-CR-232, alleging that Tapscott violated the terms and conditions of his probation by failing to report—specifically by "no contact since March 1, 2017," "failing to advise of current address," and failing to remain law abiding due to a new case 17-CR-1823.

The district court held a hearing for case numbers 14-CR-232 and 17-CR-1823 on March 23, 2018. At that hearing, Tapscott stipulated to violating the terms of this probation in 14-CR-232 by failing to report, failing to advise of his current address, and failing to remain law abiding. Given Tapscott's commission of a new crime, the district court revoked his probation in 14-CR-232 and ordered him to serve his underlying prison sentence. The district court then dismissed 17-CR-1823 with prejudice.

Tapscott timely appeals.

ANALYSIS

On appeal, Tapscott raises two allegations of error. First, he argues the district court erred in extending his probation for 32 months because the district court failed to make the necessary factual findings to support such an extension, which made his sentence illegal. Second, and for the first time, Tapscott challenges the district court's classification of his two prior Florida convictions for burglary and witness tampering as person felonies, which he claims makes his criminal history score incorrect and his sentence illegal.

I.    WAS THE DISTRICT COURT WITHOUT JURISDICTION TO EXTEND TAPSCOTT'S PROBATION?

Tapscott argues the district court lacked jurisdiction to revoke his probation in March 2018 because the district court did not make the proper findings required by K.S.A. 2015 Supp. 21-6608(c)(5) when it extended his probation in November 2015 for 32 months. He claims that because the extension of his probation was improper, his probation term was already completed by March 2018, which invalidated the district court's revocation of his probation.

6

Once a violation has been established, the decision to revoke probation lies within the sound discretion of the district court. See *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008). "Judicial discretion is abused if [the] action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law . . . ; or (3) is based on an error of fact." *State v. Jones*, 306 Kan. 948, Syl. ¶ 7, 398 P.3d 856 (2017). This discretion is limited by the intermediate sanctions as outlined in K.S.A. 2015 Supp. 22-3716. Tapscott bears the burden to show an abuse of discretion by the district court. See *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

K.S.A. 2015 Supp. 21-6608(c)(5) states:

> "[I]f the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms provided in subsections (c)(3) and (c)(4), the court may impose a longer period of probation. Such an increase shall not be considered a departure and shall not be subject to appeal."

However, a party must object to inadequate findings to preserve the issue for appeal. See *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). When no objection is made to a district court's inadequate findings, we presume the district court made the necessary findings to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). Here, at no time did Tapscott object before the district court or even directly appeal the district court's decision to extend his probation for 32 months on November 20, 2015. Accordingly, we presume the district court's decision to extend Tapscott's probation was necessary and its ultimate revocation of his probation was not improper.

7

II.     DID THE DISTRICT COURT IMPROPERLY CALCULATE TAPSCOTT'S CRIMINAL HISTORY SCORE?

Tapscott also challenges the classifications of two of his prior convictions from Florida—burglary and witness tampering. He argues that both of these convictions should have been classified as nonperson felonies. If Tapscott is correct, then his criminal history score would change from A to C. See K.S.A. 2018 Supp. 21-6809.

Tapscott raises this sentencing issue for the first time on appeal. Tapscott did not challenge his sentence on direct appeal, nor did he subsequently file a motion to correct an illegal sentence before the district court. However, K.S.A. 2018 Supp. 22-3504(1) provides that an illegal sentence may be corrected at any time, and our Supreme Court has allowed an appeal of underlying sentences even after the revocation of the defendant's probation. See *State v. Dickey*, 305 Kan. 217, 219, 380 P.3d 230 (2016) (*Dickey II*).

Whether a sentence is illegal is a question of law over which an appellate court has unlimited review. *State v. Neal*, 292 Kan. 625, 630, 258 P.3d 365 (2011). Likewise, interpretation of a statute is a question of law subject to unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq., provides that criminal sentences are based on two controlling factors:  the criminal history of the defendant and the severity level of the crime committed. See K.S.A. 2018 Supp. 21-6804(c); *State v. Vandervort*, 276 Kan. 164, 178, 72 P.3d 925 (2003), *overruled in part on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015) (*Dickey I*). A defendant's criminal history score is calculated by tabulating the offender's prior convictions, with A being the highest and I being the lowest. See K.S.A. 2018 Supp. 21-6803(d); K.S.A. 2018 Supp. 21-6804(a); K.S.A. 2018 Supp. 21-

8

6805(a); K.S.A. 2018 Supp. 21-6809. Prior convictions or adjudications are classified as either misdemeanors or felonies and person or nonperson, with some exceptions. K.S.A. 2018 Supp. 21-6810; K.S.A. 2018 Supp. 21-6811. The higher the defendant's criminal history score and/or the greater the severity level of the crime of conviction, the lengthier the guideline sentence. K.S.A. 2018 Supp. 21-6804(a); K.S.A. 2018 Supp. 21-6805(a).

As a preliminary matter, the State argues that Tapscott's complaints are barred by the invited error rule, namely, that if any error occurred it is because Tapscott invited it. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). However, a defendant's stipulation to the legal effect of prior convictions on his criminal history score may be subsequently challenged and is not barred by the invited error doctrine. See *State v. Hankins*, 304 Kan. 226, 232, 372 P.3d 1124 (2016). By challenging the accuracy of his criminal history score, Tapscott is "not challenging the factual existence of his [out-of-state] convictions. Rather, he is challenging the legal effect of scoring his out-of-state convictions as person offenses for criminal history purposes. By challenging the classification of his prior out-of-state crimes, [defendant] challenges the accuracy of his criminal history score, thereby alleging an illegal sentence." See *State v. Ruiz*, 51 Kan. App. 2d 212, 231-32, 343 P.3d 544 (2015). Because an illegal sentence is reviewable at any time, we now move to the merits of Tapscott's issue on appeal.

The state of the law surrounding sentencing in Kansas is turbulent. It seems at every juncture there is an amended statute or reinterpretation of the law that affects how we are to review illegal sentences and classify prior out-of-state convictions. See Savely, *25 Years of the Kansas Sentencing Guidelines: Where We Were, Where We Are, and What's Next?*, 86 J.K.B.A. 22, 23-30 (Aug. 2017). As a prime example, the state of our sentencing law has changed markedly within the past four months.

Very recently, on April 19, 2019, the Kansas Supreme Court held:

9

"[T]he legality of a sentence under K.S.A. 2018 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law." *State v. Murdock*, 309 Kan. 585, Syl., 439 P.3d 307 (2019) (*Murdock II*).

This holding raises questions as to the retroactivity of *Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018), which held:

"For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, within the meaning of K.S.A. 2017 Supp. 21-6811(e)(3) (the amended version of K.S.A. 21-4711[e]), the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced."

The holding in *Wetrich* was an evolved interpretation of the court's prior interpretation of "comparable." Prior to *Wetrich*:

"When designating a prior out-of-state crime of conviction as a person or nonperson offense in Kansas, 'the offenses need only be comparable, not identical.' *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003). There, we held the Kansas crime that was 'the closest approximation' of the out-of-state crime was a comparable offense, and we explicitly ruled the crimes need not have identical elements to be comparable for making the person or nonperson designation. 276 Kan. at 179." *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 (2014).

See *State v. Smith*, 56 Kan. App. 2d 343, 352-354, 430 P.3d 58 (2018) (holding *Wetrich* applies retroactively); *State v. Montes*, No. 117,916, 2018 WL 4039484, at *5-6 (Kan. App. 2018) (unpublished opinion) (same).

However, in continuing its analysis, the *Murdock II* court also, and seemingly contradictorily, stated:

"There are times, however, when subsequent developments in the law might undermine an earlier merits determination. That is, true *changes* in the law cannot transform a once legal sentence into an illegal sentence, but developments in the law may shine new light on the original question of whether the sentence was illegal when pronounced. In the latter case, the 'at any time' language of K.S.A. 22-3504(1) permits a party to advance a successive motion to correct an illegal sentence premised on developments in the law that show the earlier determination was wrong on the merits." 309 Kan. at 592.

Shortly after *Murdock II*, the Supreme Court issued *State v. Newton*, 309 Kan. ___, 442 P.3d 489 (2019). Even though the *Newton* court did not explicitly say so, the court classified *Wetrich* as a change in the law and applied the law at the time the defendant was sentenced, in accordance with *Murdock II*. Under that analysis, the court held:

"At the time Newton was sentenced, Kansas caselaw construed K.S.A. 21-4711(e) to mean '[f]or purposes of determining criminal history, the offenses need only be comparable, not identical.' *Vandervort*, 276 Kan. at 179. '[T]he comparable offense' was 'the closest approximation' to the out-of-state crime. 276 Kan. at 179. In *Murdock II*'s wake, he cannot argue *Wetrich* makes his sentence, which was legal when it was imposed, illegal." *Newton*, 442 P.3d at 492.

Just a week after *Newton*, our Supreme Court then explicitly stated:

"*Wetrich* was a change in the law as contemplated by *Murdock II*. Before *Wetrich*, no Kansas case construed the term 'comparable' as used in K.S.A. 2018 Supp. 21-6811(e)(3), formerly K.S.A. 21-4711(e), to incorporate the identical-or-narrower requirement. *Vandervort* rejected such a construction when it reviewed a defendant's claim that an out-of-state offense and a Kansas offense could not be comparable since the out-of-state offense was broader, i.e., did not contain a lack-of-consent element required to commit

11

the Kansas crime. *Wetrich* substituted the statute's new interpretation for the old one. [Citations omitted.]" *State v. Weber*, 309 Kan.___, 442 P.3d 1044, 1049 (2019).

Accordingly, if a defendant was sentenced under the pre-*Wetrich* caselaw that held a "comparable offense" was "the closest approximation" to the out-of-state crime, then that sentence was legal when it was imposed and cannot become illegal based on the holding in *Wetrich*, which applies the new identical-or-narrower test to the definition of "comparable offense." See *Weber*, 442 P.3d at 1049.

Just prior to the Supreme Court's opinion in *Newton*, on May 23, 2019, Senate Bill 18 became effective. L. 2019, ch. 59, § 15. The immediate effectiveness of this law was not discussed in the *Newton* decision. Although application of the statute and the caselaw accomplish the same end result, reliance on the statute is required. See *University of Kansas Hosp. Auth. v. Board of Wabaunsee County Comm'rs*, 299 Kan. 942, 956, 327 P.3d 430 (2014) (holding under basic separation of powers concepts, statute controls over caselaw). Thus, a review of Senate Bill 18 is both imperative and required.

Prior to Senate Bill 18, K.S.A. 2018 Supp. 22-3504 read, in its entirety:

"(1) The court may correct an illegal sentence at any time. The defendant shall receive full credit for time spent in custody under the sentence prior to correction. Unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief, the defendant shall have a right to a hearing, after reasonable notice to be fixed by the court, to be personally present and to have the assistance of counsel in any proceeding for the correction of an illegal sentence.

"(2) Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

"(3) 'Illegal sentence' means a sentence: Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced. A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced."

Senate Bill 18 amended K.S.A. 22-3504 to read, in its entirety:

"(a) The court may correct an illegal sentence at any time while the defendant is serving such sentence. The defendant shall receive full credit for time spent in custody under the sentence prior to correction. Unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief, the defendant shall have a right to a hearing, after reasonable notice to be fixed by the court, to be personally present and to have the assistance of counsel in any proceeding for the correction of an illegal sentence.

"(b) Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

"(c) For the purposes of this section:

(1) 'Illegal sentence' means a sentence: Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced. A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced.

(2) 'Change in the law' means a statutory change or an opinion by an appellate court of the state of Kansas, unless the opinion is issued while the sentence is pending [on] appeal from the judgment of conviction.

"(d) The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." L. 2019, ch. 59, § 15.

Of importance here is the statutory definition of "change in the law." Importing the definition of "change in the law" into subsection (c)(1), the pertinent section of the statute reads: "A sentence is not an 'illegal sentence' because of [*an opinion by an appellate court of the state of Kansas*] that occurs after the sentence is pronounced." This appears to be an effort to cut off the flood of motions to correct illegal sentences.

Given Senate Bill 18, which applies retroactively, we need not grapple with the implications of *Murdock II* on the retroactivity of *Wetrich* because the Legislature has answered the question for us: *Wetrich* is a "change in the law" because it is undoubtedly "an opinion by an appellate court of the state of Kansas." L. 2019, ch. 59, §§ 15, 19. Therefore, we must take a "snapshot" of the state of the law at the time Tapscott was sentenced, disregarding developments in the interpretation of the law by the Kansas appellate courts. See *Newton*, 442 P.3d at 492.

Tapscott was sentenced on November 5, 2014. Therefore, we must determine whether Tapscott's sentence was legal under the state of the sentencing law in existence at that time. Yet this task is easier said than done because Tapscott was sentenced at a time of great upheaval in the sentencing statutes and how caselaw construed those statutes. We must discern two items that affect the legality of Tapscott's sentence: (1) which Kansas statutes do we use to compare his Florida convictions, and (2) how "comparable" was interpreted.

First, on the date of Tapscott's sentencing, K.S.A. 2014 Supp. 21-6811(e) read:

"Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony

14

or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. *In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime.* Convictions or adjudications occurring within the federal system, other state systems, the District of Columbia, foreign, tribal or military courts are considered out-of-state convictions or adjudications. The facts required to classify out-of-state adult convictions and juvenile adjudications shall be established by the state by a preponderance of the evidence." (Emphasis added.)

At that time, when determining whether a defendant's out-of-state conviction should be classified as a person or nonperson crime, the Kansas Supreme Court had interpreted K.S.A. 2014 Supp. 21-6811(e) to require the comparable offense in Kansas to be determined as of the date the defendant *committed* the out-of-state crimes, not as of the date of the crime of current conviction. See *State v. Williams*, 291 Kan. 554, Syl. ¶ 4, 244 P.3d 667 (2010) ("In designating these crimes as person or nonperson, the comparable offenses in Kansas shall be determined as of the date the defendant committed the out-of-state crimes."), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015); *State v. Murdock*, 299 Kan. 312, 317, 323 P.3d 846 (2014) (*Murdock I*) ("[T]he comparable Kansas offense should be determined as of the date the out-of-state offenses were committed."), *overruled by Keel*, 302 Kan. 560. But see H.B. 2053, L. 2015, ch. 5, § 2 (clarifying that classification of prior out-of-state convictions as person or nonperson offenses must be based on comparable Kansas offense in effect when current crime of conviction was committed); *Keel*, 302 Kan. 560, Syl. ¶ 9 ("[T]he classification of a prior conviction or juvenile adjudication for criminal history purposes under the KSGA must be based on the classification in effect for the comparable offense when the current crime of conviction was committed."). Therefore, under *Williams* and *Murdock I*—which, although later overturned, were the state of the law at the time of Tapscott's sentencing—

15

we must compare Tapscott's 1999 Florida convictions with 1999 Kansas offenses to determine comparability.

Additionally, on November 5, 2014, Kansas caselaw construed the term "comparable" in K.S.A. 2014 Supp. 21-6811(e) to mean "[f]or purposes of determining criminal history, the offenses need only be comparable, not identical." *Vandervort*, 276 Kan. at 179. The "comparable offense" at the time was "the closest approximation" to the out-of-state crime. 276 Kan. at 179.

With this framework in mind, we now move to the classification of Tapscott's Florida burglary and witness tampering convictions as person or nonperson offenses.

A.      *Tapscott's Florida Burglary Conviction*

At the time Tapscott was sentenced, the Kansas Supreme Court had held: "Obviously, the comparable Kansas offense for a Florida burglary would be our version of burglary." *State v. O'Connor*, 299 Kan. 819, 823, 326 P.3d 1064 (2014). In 1999, Kansas defined burglary as:

> "Burglary is knowingly and without authority entering into or remaining within any:
>
> "(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;
>
> "(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or
>
> "(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein.

16

"Burglary as described in subsection (a) is a severity level 7, person felony. Burglary as described in subsection (b) is a severity level 7, nonperson felony. Burglary as described in subsection (c) is a severity level 9, nonperson felony." K.S.A. 21-3715.

In 1999, when Tapscott committed his offense, Florida defined burglary as:

"(1) 'Burglary' means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.

"(2) Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:

   (a) Makes an assault or battery upon any person; or

   (b) Is or becomes armed within the dwelling, structure, or conveyance, with explosives or a dangerous weapon; or

   (c) Enters an occupied or unoccupied dwelling or structure, and:

      1. Uses a motor vehicle as an instrumentality, other than merely as a getaway vehicle, to assist in committing the offense, and thereby damages the dwelling or structure; or

      2. Causes damage to the dwelling or structure, or to property within the dwelling or structure in excess of $1,000.

"(3) Burglary is a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:

17

(a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains;

(b) Dwelling, and there is not another person in the dwelling at the time the offender enters or remains;

(c) Structure, and there is another person in the structure at the time the offender enters or remains; or

(d) Conveyance, and there is another person in the conveyance at the time the offender enters or remains.

"(4) Burglary is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:

(a) Structure, and there is not another person in the structure at the time the offender enters or remains; or

(b) Conveyance, and there is not another person in the conveyance at the time the offender enters or remains." Fla. Stat. § 810.02 (1999).

The Florida burglary statute does not use the person/nonperson designations, but the statute clearly differentiates between burglary of a dwelling and burglary of a nondwelling structure. See Fla. Stat. § 810.02 (1999). First and second degree burglary under Fla. Stat. § 810.02(2) and (3) (1999) could have involved entry into a dwelling, and third degree burglary under Fla. Stat. § 810.02(4) (1999) involved entry into nondwelling structures.

The Florida burglary statute is a divisible statute, meaning the statute provides multiple, alternative methods of committing the crime. See *Dickey I*, 301 Kan. at 1037-

18

38. When a statute is divisible, the sentencing court is to apply the modified categorical approach to classify the offense and may look to a limited set of documents to determine the subsection under which the defendant was convicted. *Johnson v. United States*, 599 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010). These documents include charging documents, plea agreements, jury instructions, verdict forms, transcripts from plea colloquies, and findings of fact and conclusions of law from bench trials. See 599 U.S. at 144 (discussing extra-statutory materials allowed to be examined under modified categorical approach).

According to Tapscott's PSI, the only indication of which subsection he was charged under is the description of the conviction:  "Burglary Of A Structure Used As A Dwelling." However, no documents in support of this conviction are located in the record on appeal. While both parties do not directly challenge that Tapscott was convicted under Fla. Stat. § 810.02(2) or (3) (1999), making such a finding without the proper support would constitute improper judicial fact-finding. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). We suspect this issue has not been raised because Tapscott "hung his hat" on the Kansas Supreme Court's ruling in *State v. Buell*, 307 Kan. 604, 607-08, 412 P.3d 1004 (2018), which held that, under *Wetrich* and its "identical or narrower elements" approach, Kansas burglary and Florida burglary were not comparable because of the different intent elements in the two crimes. But because of *Newton*, 442 P.3d at 492, we are required to examine the state of the law at the time Tapscott was sentenced to determine the comparable crime, and at the time of Tapscott's sentencing *Wetrich* was not controlling. Although typically the party complaining of error on appeal has a duty to designate a record supporting that error, the Kansas Supreme Court has made it clear that criminal history challenges can be raised for the first time on appeal. *Dickey I*, 301 Kan. at 1034 (citing *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 [2011]). Thus, we must conclude

19

Tapscott has not waived any such argument by not explicitly challenging the dwelling classification on appeal under these unique circumstances.

Because there is no appropriate documentation in the record on appeal to determine if Tapscott was indeed convicted of burglary of a dwelling—which is the critical finding to determine whether Tapscott's Florida burglary should be classified as a person or nonperson crime—we must remand the case to the district court to determine under which subsection of Fla. Stat. § 810.02 (1999) Tapscott was convicted and to examine appropriate documents related to the conviction to determine which of the statute's alternative elements formed the basis of Tapscott's conviction. If Tapscott was convicted under Fla. Stat. § 810.02(2) or (3) (1999), which are comparable to K.S.A. 21-3715(a), which was in effect in 1999, then this prior conviction was properly scored as a person offense. If, however, Tapscott was convicted under Fla. Stat. § 810.02(4) (1999), which is comparable to K.S.A. 21-3715(b) and (c), or if it is unclear under which subsection he was convicted, then Tapscott's prior Florida burglary conviction must be classified as a nonperson offense.

B.      *Tapscott's Florida Witness Tampering Conviction*

Tapscott also argues that his Florida "tampering with a witness, victim, or informant" conviction was improperly classified as a person offense. The statute under which Tapscott was convicted in 1999 reads:

> "(1) A person who knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, or offers pecuniary benefit or gain to another person, with intent to cause or induce any person to:
>
> > (a) Withhold testimony, or withhold a record, document, or other object, from an official investigation or official proceeding;

20

(b) Alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official investigation or official proceeding;

(c) Evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official investigation or an official proceeding;

(d) Be absent from an official proceeding to which such person has been summoned by legal process;

(e) Hinder, delay, or prevent the communication to a law enforcement officer or judge of information relating to the commission or possible commission of an offense or a violation of a condition of probation, parole, or release pending a judicial proceeding; or

(f) Testify untruthfully in an official investigation or an official proceeding,

commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

"(2) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from:

(a) Attending or testifying in an official proceeding or cooperating in an official investigation;

(b) Reporting to a law enforcement officer or judge the commission or possible commission of an offense or a violation of a condition of probation, parole, or release pending a judicial proceeding;

(c) Arresting or seeking the arrest of another person in connection with an offense; or

(d) Causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or from assisting in such prosecution or proceeding;

or attempts to do so, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

"(3) For the purposes of this section:

(a) An official proceeding need not be pending or about to be instituted at the time of the offense; and

(b) The testimony or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

"(4) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance:

(a) That the official proceeding before a judge, court, magistrate, grand jury, or government agency is before a judge or court of the state, a state or local grand jury, or a state agency; or

(b) That the judge is a judge of the state or that the law enforcement officer is an officer or employee of the state or a person authorized to act for or on behalf of the state or serving the state as an adviser or consultant." Fla. Stat. § 914.22 (1999).

This statute is divisible because it provides multiple, alternative methods of committing the crime. See *Dickey I*, 301 Kan. at 1037-38. Like Tapscott's burglary conviction, there is nothing in the record to enlighten us as to which subsection of Fla. Stat. § 914.22 (1999) Tapscott was convicted. As previously discussed, while ordinarily it is the appellant's duty to affirmatively designate a record on appeal, a criminal history score may be corrected at any time. *Dickey I*, 301 Kan. at 1034.

Kansas does not have one crime that is comparable with Fla. Stat. § 914.22 (1999). Rather, there are several different Kansas crimes encompassed in Fla. Stat. § 914.22 (1999). For example, Fla. Stat. § 914.22(2)(a) (1999) would be most comparable to K.S.A. 21-3832(a)(1), which is a misdemeanor, but Fla. Stat. § 914.22(1)(a) (1999) would be most comparable to K.S.A. 21-3833(a)(1), which is a felony. K.S.A. 21-3832 reads:

"(a) Intimidation of a witness or victim is knowingly and maliciously preventing or dissuading, or attempting to prevent or dissuade:

(1) Any witness or victim from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law; or

(2) any witness, victim or person acting on behalf of a victim from:

(A) Making any report of the victimization of a victim to any law enforcement officer, prosecutor, probation officer, parole officer, correctional officer, community correctional services officer or judicial officer;

(B) causing a complaint, indictment or information to be sought and prosecuted, or causing a violation of probation, parole or assignment to a community correctional services program to be reported and prosecuted, and assisting in its prosecution;

(C) causing a civil action to be filed and prosecuted and assisting in its prosecution; or

(D) arresting or causing or seeking the arrest of any person in connection with the victimization of a victim.

"(b) Intimidation of a witness or victim is a class B person misdemeanor."

23

K.S.A. 21-3833 reads:

"(a) Aggravated intimidation of a witness or victim is intimidation of a witness or victim, as defined by K.S.A. 21-3832 and amendments thereto, when:

(1) The act is accompanied by an expressed or implied threat of force or violence against a witness, victim or other person or the property of any witness, victim or other person;

(2) the act is in furtherance of a conspiracy;

(3) the act is committed by a person who has been previously convicted of corruptly influencing a witness or has been convicted of a violation of this act or any federal or other state's statute which, if the act prosecuted was committed in this state, would be a violation of this act;

(4) the witness or victim is under 18 years of age; or

(5) the act is committed for pecuniary gain or for any other consideration by a person acting upon the request of another person.

"(b) Aggravated intimidation of a witness or victim is a severity level 6, person felony."

In another example, Fla. Stat. § 914.22(1)(c) (1999) is comparable to K.S.A. 21-3808—obstructing legal process or official duty—which reads:

"(a) Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

24

"(b) (1) Obstructing legal process or official duty in the case of a felony, or resulting from parole or any authorized disposition for a felony, is a severity level 9, nonperson felony.

(2) Obstructing legal process or official duty in a case of misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case is a class A nonperson misdemeanor."

Because the record does not reveal under which subsection of Fla. Stat. § 914.22 (1999) Tapscott was convicted, we must remand this case for the district court to apply the modified categorical approach and look at the limited set of documents permitted to determine the comparable crime in Kansas. See *Johnson*, 599 U.S. at 144. In doing so, the district court should look to Kansas crimes in 1999 to determine which crime is the "closest approximation" of the specific subsection of Fla. Stat. § 914.22 (1999) that is the foundation of Tapscott's prior conviction. See *Vandervort*, 276 Kan. at 179. The comparable crime need not be identical; it need only be "similar in nature and cover similar conduct." *State v. Martinez*, 50 Kan. App. 2d 1244, 1249, 338 P.3d 1236 (2014).

Affirmed in part, sentence vacated, and remanded with directions.